IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| MARTHA BONILLA<br>836 Bonifant Street<br>Silver Spring, MD 20910<br><br>    *Plaintiff*,<br><br>v.<br><br>DIDLAKE, INC.<br>7 St. Paul Street<br>Suite 820<br>Baltimore, MD 21202<br><br>  SERVE: CSC-Lawyers Incorporating<br>          Service Company<br>          7 St. Paul Street<br>          Suite 820<br>          Baltimore, MD 21202<br><br>    *Defendant*. | CALI5 - 13044<br><br>Civil Action No:<br><br>Jury Demand |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Martha Bonilla ("Plaintiff"), by and through undersigned counsel, and hereby brings this action against Defendant, Didlake, Inc. ("Defendant"), to recover unpaid wages, interest, reasonable attorney's fees, and costs under the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq* (hereinafter, "MWHL"), to recover damages under the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code, Labor and Employment Article §§ 3-501 *et seq*, and, pursuant to MD Code, State Government, § 20-1202, for compensatory and punitive damages to redress deprivations of rights secured by state law which prohibits discrimination against employees because of sex and ethnicity / national origin, and, for grounds, states as follows:

### PARTIES

1. Martha Bonilla is an adult resident of Montgomery County, Maryland.

1

2. At all times relevant, Defendant has continuously been doing business in Montgomery County, Maryland.

## ADMINISTRATIVE EXHAUSTION

3. Plaintiff has exhausted her administrative remedies. Plaintiff filed a formal administrative complaint of discrimination based on sex and national origin at the Montgomery County, Maryland Office of Human Rights ("OHR"), Case No. E-05908. More than forty-five (45) days have passed since Plaintiff filed said complaint, and Plaintiff has complied with the statutory prerequisites for maintaining this civil action as set forth in MD Code, State Government, § 20-1202(c). Therefore, Plaintiff is entitled to bring Count III of this civil action.

## FACTS

### Unpaid Wages

4. Plaintiff began working for Defendant on September 21, 2009. Plaintiff continues to work for Defendant performing cleaning services.

5. Plaintiff is currently paid $15.71 per hour.

6. Beginning in February 2012, Plaintiff's supervisor, Kim Page began extorting money from Plaintiff.

7. From approximately February 2012 to approximately August of 2013, Ms. Page has over-reported overtime for several employees under her supervision, including Plaintiff.

8. In or around February 2012, Page approached Plaintiff and told Plaintiff that she had added overtime to Plaintiff's paycheck. Ms. Page then instructed Plaintiff to go to her bank, cash her check, and give Ms. Page $600.00. When Plaintiff refused to comply, Ms. Page threatened to fire Plaintiff.

9. Since that date, Ms. Page has extorted money from Plaintiff in every, or virtually pay period. Each time Plaintiff received her paycheck, Ms. Page would either insist upon accompanying her to the bank and waiting while she cashed it, or coerce Plaintiff into going to the bank while Ms. Page waited at the office. Since this extortion began, Ms. Page's demands have increased to $800.00 or $1,000.00 per pay period.

10. Plaintiff has repeatedly objected to Ms. Page's demands. As she did, Ms. Page continued to threaten Plaintiff. Ms. Page would tell Plaintiff: "You better shut your month. You don't have to tell nobody in this place. If you run your mouth, I'll have my uncles cut your tongue out. They don't care if the police is around." Ms. Page continually made similar threats of violence to Plaintiff in order to ensure her compliance.

11. Plaintiff generally worked approximately 15 hours of overtime per week for Defendant. Ms. Page, however, always extorted more overtime pay than she had wrongfully added to Plaintiff's paycheck. As a consequence, Plaintiff worked approximately 15 hours of overtime per week without receiving wages. For all hours worked each week by Plaintiff in excess of forty (40), Plaintiff received no compensation from Defendant. Additionally, Plaintiff incurred tax liability on hundreds of hours of pay for which she was never compensated.

12. The MWPCL and MWHL require that a non-exempt employee working overtime hours in excess of forty (40) must be paid at the overtime rate of one-and-one-half (1½) times their regular rate of pay.

13. Plaintiff was not an exempt employee and should have been paid for overtime hours at the MWPCL and MWHL required rate.

3

14. Plaintiff is owed unpaid wages in the amount of one-half (½) times her regular rate of pay for each overtime hour she worked in excess of forty (40) during each week from approximately February 2012 through approximately August of 2013.

15. Defendant's failure and refusal to pay Plaintiff all wages (including overtime wages) earned for work duties performed was willful, intentional, and was not the product of a dispute between any Plaintiff and Defendant.

### Ethnic Discrimination

16. During the course of Plaintiff's employment with Defendant, Ms. Doris Fowler, another of Plaintiff's supervisors, routinely displayed racial animus towards me and other Latino employees.

17. Ms. Fowler frequently made statements such as "why do Latinos have so many kids, you have kids like animals!" and "Latinos are only in this country to get food stamps and welfare."

18. Ms. Fowler also told me and other Latino employees "[t]his is America, you have to speak English or go back to your country." When I did try to speak English, Ms. Fowler would berate me for not speaking perfectly, saying things like "I don't understand what the fuck you are saying, speak English!" or, "[Y]ou see my color, I am black, I don't speak Spanish."

19. Ms. Fowler also regularly insulted Latin ethnic cuisine, stating that "Latin food is disgusting" or that my food "smells like shit."

20. Ms. Fowler constantly yelled at Plaintiff and treated her with disrespect. To get Plaintiff's attention, Ms. Fowler would snap her fingers at Plaintiff. Ms. Fowler also went through Plaintiff's bag and jacket pockets without permission.

4

21. Conversely, Ms. Fowler treated African-American employees situated similarly to Plaintiff very differently. Whenever Plaintiff arrived to work early, she was not allowed to clock in until her shift officially began. African-American employees were permitted to clock in as soon as they arrived. Whenever Plaintiff did clock in early, Ms. Fowler would change Plaintiff's timesheet.

22. Around May of 2013, Plaintiff, along with another employee, complained to Ms. Page about Ms. Fowler's continued racial harassment. Plaintiff had approached Ms. Page about this issue several times before. On this occasion, however, Ms. Fowler approached Plaintiff the next day and shouted at and kicked Plaintiff. Plaintiff fell to the ground and suffered injuries from Ms. Fowler's attack.

23. Plaintiff reported this attack to Ms. Page, who was dismissive of Plaintiff's complaints. Ms. Page took no further action.

24. On August 8, 2013, Plaintiff made a complaint to Ileana Gasperino, Defendant's Human Resources representative. Plaintiff told Ms. Gasperino about Ms. Fowler harassing her and physically assaulting her, and about Ms. Page refusing to intervene on her behalf. The human resources department took no proactive steps to end the discrimination and harassment.

25. In or around August of 2013, Ms. Fowler told Plaintiff that she wanted to be transferred to an area where there were no Hispanic employees. In or around July 2013, Ms. Fowler told Plaintiff and other employees, "I don't know why they keep hiring you Spanish people. You don't speak fucking English."

26. On or around November 7, 2013, Ms. Fowler physically assaulted Plaintiff a second time. Ms. Fowler shoved into Plaintiff with her shoulder and elbow as we crossed each other walking.

5

### Sexual Harassment

27. Defendant's harassment and disparate treatment of Plaintiff was not limited to her ethnicity or national origin. While in Defendant's employ, Plaintiff was regularly subjected to unwanted and severe a pervasive sexual advances creating a hostile and untenable work environment.

28. The primary perpetrator of sexual advances against Plaintiff was an employee at Plaintiff's project site, Mr. Clyde Owen.

29. Mr. Owen would constantly make vulgar remarks and sexual propositions to Plaintiff. Mr. Owen told Plaintiff that he wanted to have sex with a young woman, and that he did not want to have sex with his wife anymore.

30. On multiple occasions, Mr. Owen suggested that he and Plaintiff go to a hotel room to have sex. Mr. Owen also offered to pay Plaintiff for sex and to be Plaintiff's "sugar daddy."

31. Mr. Owen inappropriately touched Plaintiff on my head, shoulders, and legs.

32. On one occasion, in or around June 2013, Mr. Owen assaulted Plaintiff. Mr. Owen entered the office where the workers ate lunch. Plaintiff was alone in the office. Mr. Owen told Plaintiff "hey baby, you're so beautiful." He then grabbed and squeezed Plaintiff's breasts with both hands. Plaintiff screamed and swore at Mr. Owen. After that incident, Mr. Owen began making complaints against Plaintiff, saying Plaintiff was not performing her job properly.

33. These sexual advances by Mr. Owen made Plaintiff feel disgusting and Plaintiff tried to keep her distance from Mr. Owen.

34. Mr. Owen made Plaintiff feel uncomfortable, scared, insecure, disgusting, and eventually unsafe at work.

35. On many occasions, Plaintiff complained about Ms. Page, Ms. Fowler, and Mr. Owen to Ileana Gasperino, Defendant's Human Resources representative. Defendant did little to rectify the situation. As a result, Plaintiff needed to visit a psychologist and went to therapy for two months. Plaintiff also suffered from anxiety, depression, felt physically ill, and had trouble sleeping.

36. Further, as a direct consequence of Plaintiff's complaints regarding unpaid wages, ethnic discrimination, and sexual harassment, Defendant retaliated against Plaintiff by micromanaging Plaintiff and assigning Plaintiff more difficult tasks. Plaintiff was also assigned more work and expected to complete her tasks in the same amount of time. Defendant's retaliatory actions are plainly designed to motivate Plaintiff to quit her job.

37. On or about March 7, 2014, Plaintiff timely filed a charge with the Montgomery County Office of Human Rights and (on or about that date) cross-filed with the U.S. E.E.O.C. alleging that Defendant violated the Prince George's County Code and Federal Law by subjecting Plaintiff to discriminatory practices based on her sex and ethnicity / national origin.

38. Defendant has engaged in unlawful employment practices by allowing managers to subject Plaintiff to sexual harassment and ethnicity / national origin harassment that altered the terms and conditions of her employment and created a hostile work environment.

39. On many occasions throughout Plaintiff's employ, Plaintiff reported the above referenced sexual harassment and ethnicity / national origin harassment to her supervisors. Defendant knew or should have known that Plaintiff was being subjected to unlawful sexual harassment and ethnicity / national origin harassment.

40. Defendant failed to act reasonably to prevent or correct the sexual harassment and ethnicity / national origin harassment.

41. The effect of the practices complained about above has been to deprive Plaintiff of employment opportunities and to otherwise adversely affect her status as an employee because of her sex, female and her ethnicity / national origin, Latin American, Salvadorian.

42. The unlawful employment practices complained about above were intentional.

43. The unlawful employment practices complained about above were willful, wanton, malicious and oppressive and were done with reckless indifference to Plaintiff's protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from engaging in harassment of employees because of sex and any other employment practice which discriminates on the basis of sex.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from engaging in harassment of employees because of ethnicity / national origin and any other employment practice which discriminates on the basis of ethnicity / national origin.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals of Latin American and/or Salvadorian decent and which eradicate the effects of its past and present unlawful employment practices.

E. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including unpaid wages, damages, pre and post judgment interest, and other pecuniary losses, in amounts to be determined at trial.

F. Order Defendant to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses in the amount of $250,000.00.

G. Order Defendant to pay punitive damages to Plaintiff for its malicious and/or reckless conduct described above, in the amount of $250,000.00.

H. Order Defendant to pay Plaintiff's reasonable attorney's fees, and costs.

I. Grant such further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Jason D. Friedman, Esq.
Zipin, Amster & Greenberg, LLC
836 Bonifant Street
Silver Spring, MD 20910
(301) 587-9373 (phone)
(301) 587-9397 (facsimile)
Email: jfriendman@zagfirm.com

*Counsel for Plaintiff*